The STATE of Texas, Appellant,

v.

Roy ADAMS, Jr., et al., Appellees.

No. 15045.

Court of Civil Appeals of Texas,
San Antonio.

May 31, 1972.

Rehearing Denied Jan. 10, 1973.

Crawford C. Martin, Atty. Gen. of Texas, Merrill Finnell, Asst. Atty. Gen., Austin, for appellant.

Joe E. Briscoe, Allen C. Lee, Devine, for appellees.

CADENA, Justice.

The State of Texas appeals from a judgment, based on a jury verdict, awarding appellees, Roy Adams, Jr., and wife, Molly Adams, $14,750.00 as compensation for land being taken for the construction of Interstate Highway 35 in the town of Artesia Wells.

We consider first the State's points assigning as error the admission into evidence, and the subsequent refusal of the trial court to strike, the testimony of Leroy Peters, Jr., who gave testimony concerning the value of the land on behalf of appellees. The basis of this complaint is that the value opinion of the witness was based on "comparable" sales which are not in fact comparable.

While Peters was testifying, the State urged several objections to the admission of evidence concerning the three comparable sales which Peters described. Although all of these objections were overruled, the State's brief contains no points challenging these specific rulings, nor does its motion for new trial embody any grounds complaining of the admission of the details of these sales.

The challenge embodied in the State's fourth point is based on the contention that the Peters testimony was improperly admitted and allowed to be considered by the jury because such testimony " . . . was based on an improper method of valuation in that he used as a comparable sale one eight-year-old sale, . . . although he admitted that the market had changed, . . . ."

The State's Brief asserts that this point is based on the first and second "assignments of error" in its motion for new trial. The first assignment of error in the motion for new trial contends that the trial court erred in admitting " . . . the land value testimony of Leroy Peters, Jr., because such testimony was based upon hearsay and upon an improper method of valuation and not the market value, and such testimony was not supported by any admissible comparable sales the only comparable sales used were inadmissible in that such sales reflected project influence." The second assignment of error complains of the court's refusal to

strike the "land value testimony" of Peters because such testimony was inadmissible for the same reasons set out in the first assignment.

■ It is clear that the motion for new trial fails to call the trial court's attention to the fact that the State was contending that such land value testimony was inadmissible and could not be considered by the jury, because it was based on a sale which was too remote in time to be considered as a comparable sale. The record also discloses that the State's objection to such land value testimony, and its motion to strike, were not based on the ground that such sale was too remote to be considered. The State failed to preserve properly the error, if any, of which it complains in its fourth point. 4 McDonald, Texas Civil Practice, Sec. 18.04.01 (1971 rev.).

The State's third point condemns the land value testimony of Peters " . . . because such witness used an improper method of valuation in that he used as comparable sales two sales . . . which . . . were influenced by the project for which . . . [the land of appellees] was taken." This contention is germane to the first two assignments of error in the motion for new trial, and this challenge to the testimony was properly made during the course of the trial.

■ It should be pointed out that the question before us involves the trial court's admission of, and its refusal to instruct the jury to disregard, all of the value testimony given by Peters. The motion for new trial contains no contention directed at the admission into evidence of that portion of the Peters testimony in which he gave details of the two sales in question. The question before us, then, is simply whether all of the value testimony of a witness who has shown himself to be qualified to express an opinion on the value of

land being taken, is rendered inadmissible *in toto* because, in reaching his opinion as to value, he considered some sales which, for the purpose of this opinion, we assume are not comparable.[1]

In State v. Willey, 351 S.W.2d 907 (Tex. Civ.App., Waco 1961, no writ), the condemnor asserted as error the refusal of the trial court to strike the value testimony of a witness because such testimony was based on an erroneous definition of market value. In rejecting this contention, Chief Justice McDonald said: "We perceive no error. The witness was qualified beyond any doubt to testify as to values. The objection goes to the weight rather than to the admissibility of Davis' testimony." 351 S.W.2d at 909. The same ruling was made in City of Teague v. Stiles, 263 S.W.2d 623 (Tex. Civ.App., Waco 1954, writ ref'd n. r. e.), with respect to the assertion that the value testimony was given by witnesses who, not being qualified on market value, based their estimates on their own personal opinion. The Court said: "It is a well established rule that when a witness gives evidence that he is acquainted with the market value, he is prima facie qualified to testify concerning value as an expert. His testimony is admissible as such, and it then becomes a question of the weight that may be given it by the jury. City of Houston v. Schorr, Tex.Civ.App., 231 S.W.2d 740 [Galveston 1950, writ dism'd]; City of Trinity v. McPhail, Tex.Civ.App., 131 S.W.2d 803 [Galveston 1939, no writ]." 263 S.W.2d at 629.

Peters testified that he was in the real estate business in La Salle County; that he was familiar with land values in that county; and that he knew the market value of land in the area in which the land of appellees was located. The State raised no question concerning his qualifications. The State's objections go to the weight, rather than the admissibility, of the value testimony given by Peters.

1. Cf. City of Houston v. Collins, 310 S.W. 2d 697 (Tex.Civ.App., Houston 1958, no writ), where it was said that sales made after the taking are admissible as long as they do not involve land which has " . . . been benefited by the project occasioning the taking." 310 S. W.2d at 697.

In any event, the record discloses that, in reaching his conclusion as to value, Peters considered another sale. He was not questioned concerning the details of such other sale.

The State's first, second, fifth, sixth and seventh points assert, in substance, that there is no evidence or, in the alternative, insufficient evidence, to support the jury finding that the property of appellees had a market value of $14,750.00.

Four witnesses testified on behalf of appellees as to the value. Appellee, Roy Adams, Jr., after saying that he was familiar with property values, testified that the land, independently of improvements, had a market value of $10,000.00, and that the replacement value of the improvements (reproduction cost less depreciation) was $12,000.00. Mrs. Adams testified to the same effect, which is not surprising since she admitted "discussing the problem" with her husband.

Peters made no effort to testify considering the replacement value of the improvements, nor did he give an opinion as to the value of the land and the improvements, considered as a unit. He stated that the land alone, without considering the improvements, had a value of $9,000.00. Dwight Hearne, a contractor, testified that the replacement value of the improvements was $12,000.00. He expressed no opinion as to the value of the land alone, nor did he testify concerning the value of the land and improvements considered as a unit.

Two of the State's value witnesses assigned a market value to the land and improvements as a unit. Roy Wright testified that the land and improvements were worth $8,500.00, while John Gaston valued the property at $8,350.00.

The State's assault on the evidentiary support for the jury finding is based on the fact that no witness who evaluated the land and improvements as a unit assigned to the property of appellees a value in excess of $8,500.00.

■ We have no quarrel with the State's argument to the effect that, in the ordinary case, it is improper for the fact-finder, in determining the market value of property being taken, to add the replacement value of improvements to the value of the land. However, it is not improper to present value testimony in the form of evidence as to the separate value of the land, considered as vacant land, and the replacement value of the improvements. As the Supreme Court said in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979, 980 (1936), "It is a general rule that improvements . . . are to be considered as a part of the realty. They ordinarily have no market value separate from the land. Therefore, when such improvements are taken or destroyed their value can be reflected in the finding as to the value of the land taken, and evidence of their value is admissible for that purpose."

■ If testimony of the separate replacement value of the improvements is admissible, and if the question of the value of land and improvements may properly be determined by adding to the value of the land the extent, if any, to which the improvements enhance the value of the land, it necessarily follows that separate evidence concerning the value of the land alone is admissible. If the value of X (land and improvements considered as a unit) is to be determined by the extent to which the value of Y (the land alone) is enhanced by Z (the improvements), the fact-finder whose obligation it is to fix a value to the unit X must have information concerning the value of Y.

Our attention has been called to no case in which it is held that the determination of the extent to which improvements enhance the value of land can be made only by a value witness. The extent to which the improvements increase the value of the land will be reflected, according to *Carpenter*, in

the jury's finding as to the value of the property taken. The Supreme Court in *Carpenter* did not say that evidence of the value of improvements is admissible only for the purpose of demonstrating the basis for the expert's conclusion as to the value of the unit. The *Carpenter* language makes it clear that such evidence is admissible so that it may be reflected in the jury's finding as to the value of the unit. It is admitted as direct evidence of the value of the unit, and not merely for the purpose of explaining the expert's conclusion and enabling the jury to evaluate his testimony.

This Court, in Lower Nueces River Water Supply District v. Sellers, 323 S.W. 2d 324 (1959, writ ref'd n. r. e.), set aside a jury's value finding in a case where some of the witnesses, being qualified to testify only as to the value of the land, but not improvements, testified as to the value of the land only, while other witnesses, qualified to testify as to the value of improvements, but not of land, gave testimony limited to the value of the improvements. The finding was set aside not, as the State contends, because the witnesses valued the land and improvements separately, but because the trial court, in effect, instructed the jury that they might arrive at the value of the unit by adding the value of the improvements to the separate value of the land. The language of the opinion in *Sellers* makes this clear.

> "While these separate values on improvements are admissible in evidence in arriving at the compensation, the improvements on the land taken are to be considered a part of the realty. They ordinarily have no market value separate from the land, and when considered in arriving at the amount of compensation or damages, improvements can only be considered to the extent that they add to, increase, or enhance the value of the land. Nowhere in the court's instructions was the jury advised that the consideration of the improvements should be so limited . . ". . We think this erroneous instruction was calculated to

and probably did cause the jury to improperly determine the value of the 'property' inquired about in said issue and thus led to an improper verdict and judgment." 323 S.W.2d at 330–331.

In this case, the trial court instructed the jury that since improvements ordinarily have no value alone, in arriving at the market value of the property they could ". . . only consider the value of the improvements to the extent that they add to, increase or enhance the value of the land, if any." The trial court here did not repeat the error which led to the setting aside of the verdict in *Sellers*.

County of Nueces v. Salley, 348 S.W.2d 397 (Tex.Civ.App., San Antonio 1961, writ ref'd n. r. e.), also resulted in the setting aside of a value finding in a case where "the defendant's evidence throughout the trial valued the land and the" improvements (nursery stocks) "separately." But once again, as in *Sellers*, the finding was set aside because the court's charge " . . . would lead the jury to believe that it would be proper to add the two values together . . . . In that connection, the jury should be instructed that they may, in valuing the land, take into consideration permanent improvements on the land, insofar as such improvements add to, increase or enhance the value of the land as such." 348 S.W.2d at 400. In this case, the jury was given the instruction which *Salley* requires to be given in cases where the landowner's witnesses "throughout the trial valued" the land and the improvements separately.

There is nothing in this record to indicate that the jury disregarded the trial court's instruction and added the value of the improvements to the value of the land. Adams and his wife valued the land, independently of improvements, at $10,000.00. Peters valued the land, independently of improvements, at $9,000.00. There is no other testimony concerning the separate value of the land. Adams, Mrs. Adams, and Hearne testified that the replacement value

of the improvements was, in round figures, $12,000.00. The State produced a contractor who testified that the cost of reproducing the improvements at $11,660.00, and that the improvements had suffered 30% depreciation. This would yield a replacement value of $8,162.00. It is clear that no combination of land value and replacement value would yield the figure $14,750.00. The addition of the lowest replacement value, $8,162.00, to the lowest land value, $9,000.00, would yield a total value of $17,162.00.

■ In connection with their challenge to the sufficiency of the evidence to support the verdict, the State asserts that appellees' evidence as to the value of the land must be disregarded because the testimony of the three witnesses concerned is based entirely on hearsay. The record does not support this contention.

If we consider only the evidence which supports the verdict, the State's "no evidence" points must be overruled. A consideration of all of the testimony, including the testimony offered by the State which would support a finding more to the State's liking, leads us to conclude that there is sufficient evidence to support the verdict and that the State's "insufficient evidence" points are not well taken. In so holding, we necessarily overrule the State's point urging that it was entitled to judgment n. o. v. because there was no evidence of probative force to show a market value of the land taken in excess of $8,500.00.

Since the verdict is supported by sufficient evidence, the court did not err in rendering judgment on the verdict.

Since we have held that the trial court committed no error, the State's point asserting that the judgment must be reversed because of the "cumulative effects" of the errors complained of in the first seven points must be overruled.

The judgment of the trial court is affirmed.