**Kenneth ADAMS, Appellant,**

v.

**Carl M. MORRIS et al., Appellees.**

**No. 1198.**

Court of Civil Appeals of Texas, Tyler.

June 28, 1979.

David E. Leuders, Houston, for appellant.

David O. Cluck, Larry D. Thompson, Lorance, Thompson & Wittig, Edward Murr, Michael P. Graham, Baker & Botts, Houston, for appellees.

SUMMERS, Chief Justice.

This is a case in which recovery is sought for personal injuries resulting from an automobile-pedestrian collision.

In the early evening of November 25, 1974, at approximately 7:00 p. m., John Gonsoulin and Kenneth Adams, both age 17, were riding in an automobile owned by the Adams family. The two boys, both employed by a nearby hospital, went for the drive in order to smoke a marijuana cigarette during their work break. After Adams had driven but a block or two from the hospital, he switched places with Gonsoulin so that he could eat a box of chicken and drink a coke which he had purchased earlier. Gonsoulin had briefly driven the Adams vehicle, a 1973 Volkswagen, on only one other occasion in a parking lot; therefore Adams reviewed the gears with Gonsoulin. The two boys then proceeded to drive through a residential area with Gonsoulin operating the automobile and Adams in the right front seat. The posted speed limit was 20 miles per hour, and street signs warned drivers of children playing in the neighborhood.

As Adams and Gonsoulin drove through the residential area, Adams spilled his coke between his legs and onto the seat. With the box of chicken in one hand and the coke in the other, Adams stood up and directed Gonsoulin to grab a napkin and wipe off the seat. As they attempted to clean up the

spill, neither Gonsoulin nor Adams was paying any attention to their direction of travel. It is undisputed that Adams did not request Gonsoulin to stop the vehicle or reduce its speed. The vehicle drifted to the left, crossed the street, jumped the curb, and struck Scott and Sheri Morris as they played in their yard. The automobile struck the curb with sufficient force to blow a tire and travel another 108 feet before coming to a stop. Scott, age 9, and Sheri, age 10, sustained serious injuries.

Scott and Sheri Morris brought suit through their next friend, Carl M. Morris, their father who also sued individually, against Gonsoulin and Adams alleging that each defendant was guilty of negligence and that their negligent acts and omissions were the proximate causes of plaintiffs' injuries. After suit had been filed, Gonsoulin entered into a compromise settlement agreement with plaintiffs. In accordance with the terms of such settlement, the trial court, on May 18, 1976, severed plaintiffs' cause of action against Gonsoulin from the cause of action against Adams and rendered judgment in favor of plaintiffs against Gonsoulin in the amount of $350,000.00. The plaintiffs have continued to prosecute their cause of action against Adams. Subsequently, Adams filed a third-party action against Gonsoulin seeking indemnity and/or contribution, and the case proceeded to trial in this posture.

In response to the special issues submitted, the jury found both Gonsoulin and Adams to have been guilty of negligence. The jury found that Gonsoulin failed to keep such a lookout as would have been kept by a person using ordinary care, was driving at a greater rate of speed than a person using ordinary care would have driven, and failed to make such application of the brakes as would have been made by a person using ordinary care. The jury also found that such acts and omissions were a proximate cause of the occurrence in question. (Special Issues Nos. 1–6) In addition, the jury found that Adams diverted the attention of the driver from the road, instructed the driver to assist in cleaning the spilled drink while the driver was operating the vehicle, failed to request the driver to stop the car while the spilled drink was being cleaned up, and failed to request the driver to reduce the speed of the vehicle. (Special Issue No. 7) Such acts and omissions on the part of Adams were found by the jury to have constituted negligence which was a proximate cause of the occurrence in question. (Special Issues Nos. 8 and 9) The jury also found that after Adams had diverted the driver's attention from the road, Adams failed to keep such a lookout as would have been kept by a person using ordinary care in the same or similar circumstances and that such failure was a proximate cause of the occurrence in question. (Special Issues Nos. 10 and 11) Finally, the jury determined that 60% of the negligence was attributable to Gonsoulin and 40% of the negligence was attributable to Adams. (Special Issue No. 12) The jury refused to find that on the occasion in question, Gonsoulin was driving the vehicle under the influence of marijuana. (Special Issue No. 14)

The total damages found by the jury in regards to the injuries sustained by Scott Morris were $2,290,000.00. The elements of damage which could be considered by the jury were physical pain and mental anguish, physical impairment, and reasonable compensation for the necessary medical expenses, hospital care, nursing services, medicine, and physician fees. These elements included both those required or suffered in the past and those which in reasonable probability will be required or suffered in the future. In addition, the jury could consider Scott Morris' loss of earning capacity which in reasonable probability will be suffered in the future after reaching age 18. In regards to the injuries sustained by Sheri Morris, the jury found damages totaling $165,000.00. The elements of damage which could be considered by the jury were physical pain and mental anguish suffered in the past and which, in reasonable probability, will be suffered in the future and disfigurement. In addition, the jury could consider reasonable compensation for necessary medical expenses, hospital care, nurs-

ing services, medicine, and physician fees which may have been required in the past or which will, in reasonable probability, be required in the future.

Upon motion by plaintiffs, the trial court reduced the total damages assessed by the jury from $2,455,000.00 to $2,370,400.00. The trial court then rendered judgment that plaintiffs recover $948,160.00 from Adams (40% of $2,370,400.00). From this adverse judgment Adams, appellant, has perfected this appeal predicated upon twenty points of error.

The primary question raised by appellant on appeal is whether appellant, a passenger in the vehicle at the time of the accident here in question, breached any duty owed by him to plaintiffs. Appellant contends that he had no duty to request the driver to stop the car or slow down while the spilled drink was being cleaned up, had no duty to keep a proper lookout, and breached no duty by asking the driver for a napkin. Under the facts of this case, appellant argues that the trial court erred in placing a duty for the safe operation of the automobile upon appellant. We disagree.

█ The duty of a passenger in an automobile is measured by the same standard of care as that of the driver; the test applied is reasonable care, the care a reasonably prudent person would exercise under like circumstances. However, the conduct required of a passenger to satisfy that duty may be quite different from that required of the driver. *Edmiston v. Texas & New Orleans Railroad Company,* 135 Tex. 67, 138 S.W.2d 526, 529 (Tex.Com.App.1940, opinion adopted); *Galvan v. Sisk,* 526 S.W.2d 717, 719 (Tex.Civ.App.—Amarillo 1975, n. w. h.).

The general rule regarding a passenger's duty to keep a proper lookout is stated in *Dudley v. Whatley,* 400 S.W.2d 773, 775 (Tex.Civ.App.—Houston 1966, ref'd n. r. e.):

"Ordinarily a passenger, not being in charge of the operation of the automobile, is not required constantly to keep a lookout. He may rely on the driver to keep watch unless he knows from past experience or from the manner in which the car is being driven on the particular

trip, that the driver is likely to be inattentive or careless." (Emphasis added.)
See also *Edmiston v. Texas & New Orleans Railroad Company,* supra, 138 S.W.2d at 530; *Atchison, Topeka & Santa Fe Railway Company v. Sheppard,* 447 S.W.2d 216, 219 (Tex.Civ.App.—Eastland 1969, n. w. h.); *Edmondson v. Keller,* 376 S.W.2d 5, 7 (Tex. Civ.App.—Austin 1964, ref'd n. r. e.).

█ A passenger must protest the driver's excessive speed when the speed is such that a reasonable man would realize its excessive character. *Edmiston v. Texas & New Orleans Railroad Company,* supra; *Atchison, Topeka & Santa Fe Railway Company v. Sheppard,* supra; *Brister v. Lasiter,* 444 S.W.2d 331, 337–8 (Tex.Civ.App.—El Paso 1969, ref'd n. r. e.). A passenger may not abandon the exercise of his own faculties and rely solely upon the driver when the passenger knows the vehicle is being driven in a reckless or careless manner. *Texas Mexican Railway Company v. Hoy,* 24 S.W.2d 18, 20 (Tex.Com.App.1930, jdgmt. adopted).

█ Whether or not a legal duty exists under a given state of facts and circumstances is essentially a question of law for the court. *Webb v. City of Lubbock,* 380 S.W.2d 135, 136 (Tex.Civ.App.—Amarillo 1964, ref'd n. r. e.). It is undisputed that appellant retained the authority to direct and supervise the manner in which the Adams' vehicle was operated, an authority recognized by both appellant, the passenger, and Gonsoulin, the driver. Gonsoulin was driving an unfamiliar vehicle and required a review of the gears from appellant prior to starting out. The street signs posted at the entrance to the residential area warned that children played in the area. Appellant diverted the driver's attention from the road by requesting him to clean up the seat while appellant attempted to stand up in the car. It is undisputed that while the driver's attention was so diverted, appellant failed to keep a lookout and failed to request the driver to slow down or stop. Under such a state of facts and circumstances, the trial court correctly concluded that ap-

pellant owed a duty to those situated as were the plaintiffs.

Whether or not a passenger's conduct, as measured by the standard of ordinary care, constituted negligence is a question of fact for the jury. *Langham v. Talbott,* 211 S.W.2d 987, 990 (Tex.Civ.App.— Dallas 1948, ref'd n. r. e.). It is not a question of shifting responsibility for the operation of the vehicle from the driver to the passenger, as characterized by appellant, but a question of whether appellant exercised such care as would be exercised by a reasonably prudent person in like circumstances. The trial court quite properly submitted the issues inquiring of the jury whether appellant breached his duty to plaintiffs.

Appellant's points of error nos. 1, 2, 3, 4, 5, 6, 14, 15 and 16 are hereby overruled.

Appellant's seventeenth point of error contends that the trial court erred in admitting into evidence the opinion of Officer Preckwinkle regarding the speed of the vehicle in question because the witness was not qualified to give such testimony. Officer Preckwinkle, a state trooper with the Texas Department of Public Safety since 1967, testified that although he was unable to make a definite determination of the vehicle's exact speed, it was his opinion that the Volkswagen was traveling in excess of twenty miles per hour at the time the occupants lost control of it. Appellant argues that this is the only evidence of excessive speed and that its erroneous admission was therefore reversible error. We disagree.

Officer Preckwinkle was at the scene of the accident within thirty minutes of its occurrence in order to make an investigation. His investigation included interviewing the occupants of the Volkswagen as well as observing the physical evidence. In addition to formal training in accident investigation, the witness investigated an average of between 500–800 accidents per year. In conjunction with this education and experience, Officer Preckwinkle based his opinion on the point at which the vehicle began to drift to the left, the result of the vehicle's impact with the curb, the weight of the car, and the distance the vehicle traveled before coming to a stop. It is within the trial court's discretion to determine whether a particular witness is qualified to testify as an expert, and the trial court's decision will not be disturbed on appeal unless a clear abuse of discretion is shown. *Moore v. Grantham,* 580 S.W.2d 142, 147 (Tex.Civ.App.—Tyler 1979, application for writ pndg.); *Texas Sanitation Company, Inc. v. Marek,* 381 S.W.2d 710, 716 (Tex.Civ.App.—Corpus Christi 1964, n. w. h.). We do not believe the trial court abused its discretion in the instant case.

In the event the trial court did erroneously admit Officer Preckwinkle's opinion, we believe it was harmless error. Rule 434, T.R.C.P. Appellant bases his position upon the false premise which equates the maximum posted speed limit with reasonable speed. The issue submitted to the jury was not one of statutory speed limit violation, but one of common law negligence, was the vehicle's speed excessive under the circumstances. Speed may be excessive even though it does not exceed the posted speed limit. Although a motorist may not be exceeding the speed limit, he remains under a duty to drive no faster than a reasonably prudent person under like circumstances. *Fitzgerald v. Russ Mitchell Constructors, Inc.,* 423 S.W.2d 189, 191 (Tex. Civ.App.—Houston [14th] 1968, ref'd n. r. e.); *Billingsley v. Southern Pacific Company,* 400 S.W.2d 789, 794 (Tex.Civ.App.—Tyler 1966, ref'd n. r. e.); *Seay v. Kana,* 346 S.W.2d 384, 386 (Tex.Civ.App.—Houston 1961, n. w. h.).

The record discloses that both Gonsoulin and Adams testified that they were going twenty miles per hour and that neither was keeping a proper lookout. It was dusk, and both occupants of the vehicle knew that children were at play in the area. The driver was unfamiliar with the car. Gonsoulin testified that he was driving in fourth gear, the highest, at the time of the accident. The plaintiffs were playing within about twenty feet of the curb, but the vehicle traveled approximately 108 feet be-

fore coming to a stop. The car hit the curb with sufficient force to blow out one of the tires. We therefore conclude that other evidence existed in the record from which the jury could have concluded that, under the circumstances, the vehicle was being driven at an excessive rate of speed. Officer Preckwinkle's testimony was merely cumulative and corroborative of other evidence and, even if his opinion was inadmissible, it would at most be deemed harmless error. *Adams v. Smith,* 479 S.W.2d 390, 395 (Tex.Civ.App.—Amarillo 1972, n. w. h.); *Brister v. Lasiter,* supra, 444 S.W.2d at 338.

Appellant's seventeenth point of error is overruled.

■ Appellant next contends that the trial court erred in overruling appellant's motion in limine regarding the possession of marijuana by Gonsoulin and Adams. Appellant admits in his brief that no objection was made during the trial when the marijuana possession was raised. Appellees argue that appellant has failed to preserve the error, if any, and we agree.

■ The overruling of a motion in limine may be error, but it is never reversible error. *Hartford Accident and Indemnity Company v. McCardell,* 369 S.W.2d 331, 335 (Tex.Sup.1963). Before the trial court's action in overruling a motion in limine could constitute reversible error, it must be shown that (1) the matter sought to be suppressed actually arose during the trial, and (2) the party, having originally urged the motion in limine, made a timely objection in the trial. *Hartford Accident and Indemnity Company v. McCardell,* supra; *Farias v. Texas General Indemnity,* 565 S.W.2d 117, 119 (Tex.Civ.App.—Corpus Christi 1978, n. w. h.); *St. Paul Fire & Marine Insurance Company v. Escalera,* 385 S.W.2d 477, 480 (Tex.Civ.App.—San Antonio 1964, ref'd n. r. e.). Appellant's eighteenth point of error is hereby overruled.

■ Appellant's nineteenth point of error argues that the trial court erred in permitting plaintiffs to file a trial amendment increasing the damages prayed for by plaintiffs from approximately $3,000,000.00 to about $5,000,000.00. It is well settled that the allowance of trial amendments is within the sound discretion of the trial court, and unless it is clearly shown that such discretion has been abused, its order granting or refusing a trial amendment will not be disturbed. *State of Texas v. Beever Farms, Inc.,* 549 S.W.2d 223, 225 (Tex.Civ. App.—San Antonio 1977, ref'd n. r. e.); *Missouri-Kansas-Texas Railroad Company v. Gage,* 438 S.W.2d 879, 883 (Tex.Civ.App. —Fort Worth 1969, ref'd n. r. e.). We do not feel the record reflects an abuse of discretion on the part of the trial court. Moreover, the jury's verdict only awarded damages in the amount of $2,455,000.00; therefore we cannot see how appellant could have suffered any harm as a result of the trial amendment. *City of Waco v. Texas Coffin Company,* 472 S.W.2d 800, 804 (Tex.Civ.App.—Waco 1971, ref'd n. r. e.). Appellant's point of error no. 19 is overruled.

Appellant asserts a number of points of error raising legal and factual sufficiency attacks against Special Issues Nos. 3, 7, 8, 9, 10, and 11. Special Issue No. 3 inquired of the jury whether on the occasion in question Gonsoulin was driving at a greater rate of speed than a person using ordinary care would have driven, to which the jury replied in the affirmative. In special issues 7, 8, and 9, the jury found that appellant diverted the driver's attention, instructed the driver to assist in cleaning up the drink, failed to request the driver to stop the vehicle while the spill was cleaned, and failed to request the driver to reduce his speed; that such acts and omissions constituted negligence on the part of appellant; and that such negligence was a proximate cause of the occurrence in question. Finally, in special issues nos. 10 and 11, the jury answered that appellant, after diverting the driver's attention, failed to keep such a lookout as a person using ordinary care would have kept under the same or similar circumstances, and that such failure was a proximate cause of the occurrence in question.

In determining a "no evidence" point, which is a question of law, we may consider only that evidence, if any, and the reasonable inferences therefrom, which viewed in its most favorable light, supports the jury finding and we must reject all evidence and inferences which are contrary to the finding. *Biggers v. Continental Bus System, Inc.,* 157 Tex. 351, 303 S.W.2d 359, 363 (1957); *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696, 698 (1914). We have reviewed the record in the instant case and find that there is evidence of probative force to support the jury's verdict, and appellant's points of error nos. 7, 8, 9, 10, and 12 are overruled.

In determining a factual sufficiency point, we must consider and weigh all the evidence to determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust and the finding therefore be set aside and the cause remanded for a new trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.Sup.1965); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We have examined the entire statement of facts and reviewed it in light of the rule announced by the Supreme Court in the foregoing authorities. We deem the evidence sufficient to support the jury's answers to the special issues in question and conclude that the jury's findings were not so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Appellant's points of error nos. 11 and 13 are hereby overruled.

By his final point of error, appellant asserts that the trial court erred in including the element of disfigurement in the damage issue with regards to Sheri Morris because there was no pleading to support the submission of such element of damage. Plaintiffs' petition with regards to the injuries suffered by Sheri Morris alleged:

"When the Defendant and his driver struck SHERI MORRIS, she was severely injured. She sustained a compound fracture of the right thigh, three fractures in her pelvis, a fracture of the right upper arm, a fracture of the left upper arm, and a fracture of the left clavical. She was confined to a hospital bed, shrouded in casts for a month and a half and thereafter was in a hospital bed at home in a body cast for several months. When all of the casts were finally removed, she had a shortening of the right leg. In addition to the substantial pain and suffering the young girl has already experienced, she now faces an uncertain future with additional surgery a distinct probability."

No special exceptions were directed by appellant towards plaintiffs' pleading.

In the absence of any special exception, the petition will be liberally construed in the pleader's favor and to support the judgment. *Scott v. Gardner,* 137 Tex. 628, 156 S.W.2d 513, 515 (Tex.Com.App. 1941, opinion adopted); *Aetna Casualty and Surety Company v. Clark,* 427 S.W.2d 649, 656 (Tex.Civ.App.—Dallas 1968, n. w. h.). It is not essential to the recovery of damages that the measure of damages be alleged in the petition. All that is necessary is that the petition sufficiently allege facts establishing a cause of action from which the court can ascertain the proper measure of damages. The measure of damages is a matter of law for the court. *Aetna Casualty and Surety Company v. Clark,* supra; 17 Tex.Jur.2d Damages, section 197, p. 263. We believe plaintiffs' petition in the instant case, although not using the specific term "disfigurement," sufficiently alleged the facts which resulted in her disfigurement. Appellant's twentieth point of error is overruled.

Appellee Gonsoulin presents a single cross point of error which contends that the trial court erred in failing to dismiss Adams' third-party action because Gonsoulin, third-party defendant, is not a necessary or proper party to this case or appeal. Appellee Gonsoulin argues that under section 2(e) of Article 2212a, Tex.Rev.Civ.Stat.Ann., he has been released of all further liability to any party on account of the accident which is the basis of the lawsuit. Therefore argues Gonsoulin, having no interest or stake in the outcome of this litigation, he should be

720

dismissed and not required to participate any further.

■ The procedural uncertainties under section 2, Article 2212a, *supra*, have been the subject of recent discussion. *See Deal v. Madison,* 576 S.W.2d 409 (Tex.Civ.App.— Dallas 1978, application for writ pndg.); Keeton, Annual Survey of Texas Law: Torts, 28 S.L.J. 1, 14 (1974). However, whether a determination of the alleged settling tortfeasor's negligence is possible where he is not made a party to the suit is not the question before us. In the instant case, the non-settling defendant filed a third-party action against the alleged settling tortfeasor as contemplated by section 2(e), Article 2212a, *supra*. We conclude that Adams, the non-settling defendant, could properly assert a third-party action against Gonsoulin and thereby be assured of the applicability of section 2(e), Article 2212a, *supra*. Appellee Gonsoulin's cross point of error is overruled.

We have considered all of appellant's points of error and appellee's cross point of error, and the same are hereby overruled. The judgment of the trial court is affirmed.